## THE STATE *v.* JOHN W. HAYES et al.

Article 30 of the Constitution, providing that no person who may have been a collector of taxes, &c., shall be eligible to any office of profit or trust, until he shall have obtained a discharge for the amount of such collections, is directory, and was intended to secure what was right, and not to affect what was wrong.

Where a tax collector had obtained the assessment roll from the recorder of mortgages, for one year, without having settled for the preceding year, his sureties are not released from their liability on account of the neglect of the recorder of mortgages.

The sureties of a tax collector are bound for the penalty of two per cent per month, imposed upon defaulting tax collectors.

APPEAL from the District Court of East Feliciana, *Stirling*, J. *Z. S. Lyons*, District Attorney, for the State. *E. T. Merrick* and *W. D. Winter*, for defendants. The judgment of the court was pronounced by

PRESTON, J. At the November election, in 1848, *John W. Hayes* was elected sheriff of the parish of East Feliciana. By virtue of his office, and the 41st section of the act, approved the 3d of May, 1847, to provide a revenue for the support of the government of the State, he was collector of the State taxes; and, by the 44th section of the act, was required to give bond and security, to the satisfaction of the parish recorder, in a sum at least one-half above the amount of taxes levied for State purposes, conditioned, for the faithful performance of his duty as tax collector and for the just and full payment of all sums for which he might become legally liable.

On the 25th January, 1850, he gave bond, with *Sothey Hayes*, *Thomas Chapman* and *Franklin Hardesty*, as his sureties, in the sum of seventeen thousand eight hundred and forty-two dollars, for the faithful performance of his duties as collector for the State taxes of the parish, for the year 1849. The bond was accepted by the parish recorder, and the assessment roll was delivered to him, by the recorder, for the collection of the taxes assessed.

The taxes amounted for the year, to $11,394 42. The sheriff accounted to the auditor of the State for $2,068 25, leaving a balance due of $9,825 77, which has been placed by the auditor of public accounts in the hands of the district attorney, of the district in which the parish is situated, for suit, in pursuance of the 62d section of the act, approved the 21st March, 1850, p. 144.

It is to be observed, that this act contains a complete system for the assessment and collection of taxes, and repeals all laws on the subjects of which it treats. It was passed, however, subsequently to the obligations incurred and delinquencies complained of in this suit; and, therefore, can have no effect upon them, except as to the remedy provided in the section just quoted. Those obligations and delinquencies, must be governed by the act, approved the 3d of May, 1847, p. 164, as amended by the act, approved the 20th of December, 1848, except as to the remedy of the State, because they occurred under those acts.

The district attorney has brought the suit against the sheriff and his sureties, for the amount of the defalcation; and in pursuance of the 15th section of the act of 1848, already quoted, for two per cent interest per month, on the amount of the defalcation, until it shall be settled and paid.

The sheriff made no defence, and judgment has been rendered against him for the amount claimed, and two per cent interest per month, until paid.

The sureties admit that they signed the bond, but deny every thing else material to render them liable. And, as a special defence, aver, that they incurred no liability by signing the bond, for the following, among other reasons: that at the time of signing the bond, and the delivery of the assessment roll to their principal, *John W. Hayes,* he was incapable, under the law, of receiving the same and collecting the taxes, having failed to procure from the State treasurer, or other proper officer, his receipt for all taxes and public moneys collected by him in the year 1844, of which he was also the collector; and upon which, he was then in arrears in at least the sum of ten thousand dollars. They aver, further, that this fact was concealed from them, and that the bond was signed by them in error, under the belief that the recorder had complied with the law, and exacted from *Hays* the receipt, or quietus, for his liability on the roll of 1848, before delivering to him the roll of 1849; and that, had they been aware that the recorder, acting for the State, had neglected to require the receipt or quietus, they would have utterly refused to sign the bond for 1849.

They averred further, that the amount then unpaid upon the tax roll of 1848, was, at least, ten thousand dollars; which amount, they allege, was subsequently paid up by *Hayes,* from collections upon the roll of 1849, thus illegally placed in his hands.

A verdict and judgment was rendered in favor of the sureties, and the State has appealed. The defalcation of the sheriff, to the amount of $9,825 77, has been fully established by the evidence, and it therefore becomes necessary to examine these special defences set up by his sureties.

The 30th article of the Constitution of the State provides, " that no person, who, at any time, may have been a collector of taxes, or who may have been otherwise entrusted with public money, shall be eligible to the general assembly, or to any office of profit or trust under the State government, until he shall have obtained a discharge for the amount of such collections, and for all public moneys with which he may have been entrusted."

No law was passed until 1850, for carrying into effect this article of the Constitution. The acts of 1847 and 1848, were somewhat calculated to mislead as to the mode of carrying it into effect as to sheriffs, as this case illustrates. The sheriff was reëlected in the month of November, 1849, but had, by the 62d section of the act of 1847 as amended by the 14th section of the act of 1848, until the 1st of March, 1850, to settle his accounts and make his final payments into the treasury, and to obtain his discharge. When elected, therefore, he was eligible. His commission, as sheriff, entitled him to the assessment roll as col-

STATE
v.
HAYES.

lector of taxes, in pursuance of the 41st section of the act of 1847; and it could not be withheld from him as a defaulter, because, as we have seen, he could not be required to make a final settlement and obtain his discharge for the taxes of 1848, until the 1st of March, 1850.

At this date, the sheriff's bond had been executed, and the assessment roll of 1849, delivered to him. There was no express law requiring the recorder to withhold it until after the 1st of March, 1850, and the production of the treasurer's discharge.

By a very forced inference, it is contended that the recorder should have exercised the powers conferred upon the former parish court, in this respect, by the 6th section of an act, approved the 25th of March, 1813. Admitting that he might have taken the responsibility of withholding the assessment roll until the 1st of March, 1850, under this law, or have enforced the provision of the Constitution *propria vigore*, that he was the proper officer to do so, and neglected his duty in not doing it; of what avail is all this to the sureties of the sheriff?

He had just been reëlected. It was their duty as citizens, and much more as persons about to obligate themselves for his future faithful conduct, to have inquired how he had previously discharged the duties of his office; and, above all, to have required from him the exhibition of his discharge for all public moneys previously collected, which the Constitution enjoined him to have in his possession and to produce, before commencing the collection and receipt of other public money. If the recorder neglected his duty, as contended, the sureties of the sheriff cannot successfully urge the neglect of this officer to perform his duty, as their exoneration for the misconduct of the officer for whom they became responsible. For his fidelity in 1850, they made themselves responsible, and the only material question between them and the State is, did he faithfully collect and pay over the taxes of 1849? We cannot conceive, that the neglect of one set of officers to do their duties, should exonerate the sureties of another officer for his failure to do his duty. His duty was independent of theirs, and existed, although theirs may not have been performed.

By signing the bond, the sureties enabled the sheriff to obtain the assessment roll of 1849, and thus to violate the duties, for the faithful performance of which, the sureties had made themselves responsible. There would be just as much reason for exonerating his sureties on the sheriff's bond from liability for money collected under executions, and not paid over, as to exonerate these sureties on his bond as tax collector. The provision in the Constitution is directory, to guard and not destroy the office; to secure what is right, not to affect what is wrong. For similar reasons, the sureties cannot be exonerated on the ground of error in signing the bond. The error supposed is, that they believed their principal had obtained his discharge for the collection of the taxes for the preceding years. We have seen, that he was not bound to obtain his discharge for the taxes of 1848, until the 1st of March, 1850. If the error complained of is based on the fact, that he had not paid over taxes actually collected, they were bound to make inquiry on that subject; and interested more than any other persons in the knowledge that error cannot be plead successfully as to a fact, the party was bound to know himself.

In these views, we are well supported by authority. The 6th section of an act, approved the 25th of March, 1813, provided, that "at the end of every year, for the collection of taxes, all sheriffs shall enter into a new bond, agreeably to the rules and regulations provided by the act; provided, however, that no sheriff shall be suffered, at the end of any year, to renew his bond, until he shall pro-

duce to the court the treasurer's receipt for all taxes and public monies which he may be bound to collect for the preceding year. In the case of *Police Jury of St. Landry* v. *Haw*, 2 L. R. 42, the sureties defended themselves, on the ground, that the sheriff was not authorized to collect the taxes, he not having produced the treasurer's receipt for the payment of the taxes of the preceding year, before renewing his bond, and that, therefore, it was a legal impossibility for him to execute a valid bond; and that their contract of suretyship was void on account of error, because they signed the bond in good faith, and were in utter ignorance that the requisites of law had not been complied with by their principal and the court. But the Supreme Court, through their organ, Mathews, J., held, that their principal was sheriff *de facto*, if not *de jure*; and, as such, was acknowledged by his sureties in assuming that situation, by signing the instrument of writing, wherein they took upon themselves the obligation resulting from their agreement, and should not now be permitted to deny the capacity of their principal thus acknowledged.

The same principle, substantially, was maintained by the Supreme Court, at a later period, in the case of the *Mayor and Aldermen of the City* v. *The Sureties of Blache, City Treasurer*. Analogous principles were recognized by this court, in the case of the *Louisiana State Bank* v. *Ledoux*, 3d Ann. 675.

So, the 4th section of an act of Congress, approved the 24th April, 1816, required the paymaster general of the army to recall a delinquent paymaster. It was not done; but more funds were placed in his hands after the delinquency. He failed to account for them, and his sureties were sued by the United States for the amount of the defalcation. They obtained the opinion of the circuit court and verdict of a jury in their favor, as in the present case, but the judgment was reversed by the Supreme Court of the United States, for reasons similar to those we have given. *The United States* v. *Vanzandt*, 11 Wheat. R. 184.

The verdict and judgment in this case, is erroneous in principle, and would lead to very great irresponsibility on the part of public officers and their sureties, if sanctioned by this court, and consequent deficiency in the public revenue. Interest might probably have been claimed from the date of the defalcation; but interest having been allowed against the principal, only from the judicial demand, the surities should not be held responsible for more.

It is rendered probable by the evidence, as plead by the defendants, that the sheriff paid some part of the taxes collected for 1849, on his account for 1848. The amount is very uncertain, and is immaterial. For it was his duty to have paid the money, collected from the taxes of 1849, into the treasury, on account of that year. The disposition of it, alleged by the defendants, was as much a misappropriation as if he had used it in the payment of his private debts.

It is lastly urged, that the sureties are not liable for interest at the rate of two per cent a month on the amount of the defalcation, because that is a penalty imposed upon the defaulter. We think it an obligation contracted by the sheriff for his failure to pay over the taxes collected, and that the sureties are liable for all his obligations. The interest is imposed by the 15th section of the act of the 20th of December, 1848, p. 40. The obscurity of the English text, which probably lead the counsel into error, is to be explained by the French text.

The judgment of the district court is reversed; and it is decreed, that the plaintiff recover from the defendants *in solido*, the sum of nine thousand eight

hundred and twenty-five dollars and seventy cents, with interest at the rate of two per cent a month from the date of the judgment against the principals, until paid, and costs in both cases.